# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| SONYA WOLFF, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. EP-17-CV-00328-PRM |
| | § | |
| BIOSENSE WEBSTER, INC., | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered the status of the discovery dispute in the instant case.[1] On July 24, 2018, the Court granted Plaintiff Sonya Wolff's request for an *in camera* inspection of documents claimed to be privileged by Defendant Biosense Webster, Inc. (ECF. No. 50). In the Order, the Court stated that "[t]he Court will issue a separate order ruling on the privileged status of the above-documents." *Id*.

The Court has now conducted an *in camera* review of the documents and issues this Memorandum Opinion and Order.

**A.    Background**

Biosense previously employed Wolff, a United States Citizen, at their facility in Ciudad Juarez, Mexico. (ECF. No. 5, p. 2). On February 4, 2015, Wolff complained to human resources that Biosense provided favorable treatment to Mexican nationals over United States nationals. Thereafter, on or about July 8, 2015, Biosense gave Wolff a negative mid-year performance evaluation. Days later, Wolff complained that the negative evaluation was retaliatory. *Id*.

Between January 2016 and July 2016, Wolff took medical and disability leave from work. *Id*. Wolff alleges that Biosense took various retaliatory actions during these months,

---

[1]    The matter was previously referred to this Court under 28 U.S.C. § 636(b) and Appendix C of the Local Court Rules by United States District Judge Philip R. Martinez.

culminating on August 8, 2016, when Biosense terminated her employment for "no reason." *Id.* at 2-3. Consequently, Wolff brings claims for discrimination based on national origin, retaliation, and disability discrimination. *Id.* at 3-4.

During the course of this litigation, Wolff sought the discovery of various documents related to her termination, her medical and disability leave, and her discrimination complaint. (ECF. No. 45, p. 2). Biosense claimed privilege with respect to many of the documents and produced a privilege log based on the attorney-client privilege and work product doctrine. (ECF. No. 45-3, p. 4-30). After Wolff narrowed her discovery request, and Biosense supplemented its disclosure (ECF. No. 51), the following items remain in dispute, which the Court will refer to by Group Number:

| Group Number | Bates Numbers | Privilege Asserted |
| --- | --- | --- |
| 1 | 5, 7, 20, 65, 78, 81-84, 96-98, 129, 131-133, 140, 146, 147,[2] and 158 | Attorney-Client Privilege |
| 2 | 1-2, 17-18, 24-27, 29-30, 32, 38-53, 57, 64, 76-80, 87, 94-95, 135-139, 141-144, and 148-153 | Attorney-Client Privilege |
| 3 | 3-4, 54-56, 63, 92-93, 99, 122, 134, and 145[2] | Attorney-Client Privilege |
| 4 | 6, 8-9, 28, 31, 130, and 157 | Attorney-Client Privilege |
| 5 | 62 and 123 | Work-Product Doctrine |

Thereafter, Wolff sought, and the Court granted, an *in camera* review of these privilege claims. (ECF. Nos. 45, 50). The Court now issues this Memorandum Opinion and Order

---

[2] Biosense also claims that Privilege Bates Labels 145 and 147 are protected under the Work-Product doctrine. Because, however, the Court finds the two documents protected under Attorney-Client Privilege, the Court need not determine whether they are work product. *Ferko v. NASCAR*, 218 F.R.D. 125, 136 (E.D. Tex. 2003) ("Courts ordinarily apply the work-product doctrine only after deciding that the attorney-client privilege does not apply.")

adjudicating Biosense's claims of privilege.[3]

**B. Legal Standards**

Two separate standards govern this discovery dispute – the attorney-client privilege (protecting communications) and the work-product doctrine (protecting documents).

**1. The Attorney-Client Privilege**

The attorney-client privilege is the oldest of the privileges for confidential communications. *See* 8 Wigmore, Evidence § 2290 (McNaughton Rev. 1961). The attorney-client privilege protects communications made in confidence by a client to their attorney for the purpose of obtaining legal advice. *Hodges, Grant & Kaufmann v. United States Gov't, Dep't of Treasury, IRS*, 768 F.2d 719, 720 (5th Cir. 1985). "The privilege also protects communications from the lawyer to his client, at least if they would tend to disclose the client's confidential communications." *Id*. at 720-21.

"The scope of the attorney-client privilege is shaped by its purposes." *United States v. El Paso Co.*, 682 F.2d 530, 538-39 (5th Cir. 1982). "Its purpose is to encourage full and frank communication between attorneys and their clients . . . ." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). As the purpose is to encourage communications, the attorney-client privilege only protects communications, not documents or facts. *Hodges*, 768 F.2d at 721; s*ee also Upjohn*, 449 U.S. at 395 ("The protection of the privilege extends only to communications and not to facts."). Moreover, "since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." *Fisher v. United States*, 425 U.S. 391, 403 (1976).

The proponent must satisfy three elements to establish that a communication is protected

---

[3] Many documents have been produced with redactions. When referencing the privileged status of these documents, the Court is only referencing the unredacted portions.

by the attorney-client privilege:

> (1) that the client made a confidential communication;
>
> (2) to a lawyer or the lawyer's subordinate;
>
> (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.

*United States v. Murra*, 879 F.3d 669, 681-82 (5th Cir. 2018) (citations omitted). The burden of establishing these elements rests with the party asserting the privilege. *Hodges*, 768 F.2d at 720.

A corporation may also assert the attorney-client privilege. *See Upjohn*, 449 U.S. at 389-90. In a corporate setting, the privilege extends to any employee who, on instructions from a superior, communicates with counsel on behalf of the corporation. *Brooks v. Mid-America Apartment Cmtys., Inc.*, 2016 U.S. Dist. LEXIS 75395, at *4 (W.D. Tex. 2016) (citing *id.*); *see also Nalco Co. v. Baker Hughes Inc.*, 2017 U.S. Dist. LEXIS 111127, at *4-5 (S.D. Tex. 2017). However, "communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, are not privileged, nor are documents sent from one corporate officer to another merely because a copy is also sent to counsel." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 696 (5th Cir. 2017) (citations, quotation marks, and brackets omitted).

### 2. The Work-Product Doctrine

The work-product doctrine is narrower than the attorney-client privilege as it only protects materials prepared "in anticipation of litigation." Fed. R. Civ. P. 26(b)(3); *El Paso Co.*, 682 F.2d at 542. "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). "[L]itigation need not necessarily be imminent . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).

Nonetheless, the "work-product doctrine is not an umbrella that shades all materials prepared by a lawyer." *El Paso Co.*, 682 F.2d at 542. It does not cover materials that a party assembled in the ordinary course of business, created pursuant to public requirements, or would create regardless of any anticipated litigation. *Id.*; *Reedhycalog UK, Ltd. v. Baker Hughes Oilfield Operations, Inc.*, 242 F.R.D. 357, 360 (E.D. Tex. 2007) (citations omitted).

**C.     Analysis**

At various portions of her Motion for *In Camera* Review, Wolff references the "sheer number of documents" withheld on the basis of privilege. (*See*, *e.g*, ECF. No. 45 p. 7). Many of the documents, however, are duplicative or continuations of the same email threads occurring between different employees. Thus, the privilege log contains fewer unique documents than it first appears.

       **1.     Attorney-Client Privilege Documents**

Group 1 consists of communications between United States Counsel, Mexican Counsel, and the employees tasked with disciplining Wolff.[4] Some communications involved inquiries regarding proper termination and severance methods under both United States and Mexican laws. Other communications with counsel involved Wolff's EEOC charge, the legal requirements thereof, and the information necessary for handling such a charge. These direct communications with counsel are classic examples of legal advice. Thus, the Court concludes that these communications were: (1) confidential; (2) made to an attorney; and (3) made for the primary purpose of securing legal advice or opinions.

The Court is mindful of the above caselaw which states that business communications

---

[4] Plaintiff stipulates that attorney-client privilege applies to Mexican Counsel's advice regarding Mexican law. (ECF. No. 45, p. 4). Having made an *in camera* review of the filings, Mexican Counsel's advice is limited to matters concerning Mexican law. Thus, the Court considers these matters privileged for the purposes of this Order.

5

with counsel are not privileged. After reviewing the emails and counsel's declaration, however, the Court is convinced that neither American Counsel nor Mexican Counsel participated in the business decisions regarding the discipline or termination of Wolff. Rather, the attorneys' involvement only began following Wolff's EEOC charge and Biosense's decision to terminate her employment. (*See* ECF. No. 49-1, p. 2). Accordingly, the Court finds that the Group 1 documents are privileged.

Group 2 consists of employees gathering information for the severance agreement at the behest of counsel and relaying the advice from counsel in the Group 1 documents to other employees. Collecting information for transmission to counsel is privileged if integral to the legal advice. *Nalco Co. v. Baker Hughes Inc.*, 2017 U.S. Dist. LEXIS 111127, at *7 (S.D. Tex. 2017). Similarly, "[c]ourts have consistently held that communications relaying legal advice provided by corporate counsel among nonattorney corporate employees who share responsibility 'for the subject matter underlying the consultation' are privileged." *Moffatt v. Wazana Bros. Int'l*, 2014 U.S. Dist. LEXIS 151326, at *4-5 (E.D. Pa. 2014) (collecting cases). Thus, the Court finds that the emails gathering information for counsel and relaying the advice of counsel are privileged.

Similarly, Group 3 consists of communications between non-legal employees discussing the need to obtain legal advice. "Communications between employees are privileged if they are about matters for which the parties intend to seek legal advice." *Park v. Cas Enters.*, 2009 U.S. Dist. LEXIS 100148, at *9 (S.D. Cal. 2009); se*e also Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 38-39 (D. Md. 1974); *Colley v. Dickenson Cty. Sch. Bd.*, 2018 U.S. Dist. LEXIS 66146, at *3 (W.D. Va. 2018). Thus, the Court finds that the emails discussing the need to obtain legal advice are privileged.

Lastly, Group 4 consists of draft versions of the severance agreements, the employee disciplinary template, and the investigation report of the EEOC claim. "Draft documents are only privileged to the extent that communications contained therein are not revealed to third parties." *Messagephone, Inc. v. SVI Sys.*, 1998 U.S. Dist. LEXIS 18471, at *7 (N.D. Tex. 1998); *see Muncy v. City of Dall.*, 2001 U.S. Dist. LEXIS 18675, at *10-11 (N.D. Tex. Nov. 2001). Thus, the Court finds that the Group 4 documents are privileged to the extent not previously disclosed in the final document versions.

### 2. Work Product Doctrine Documents

Group 5 consists of communications between employees in the preparation of Biosense's position statement following Wolff's EEOC charge. To establish that materials warrant work-product protection, Biosense must meet three elements:

(1) the materials must be documents or tangible things.

(2) the materials must be prepared in anticipation of litigation or for trial. In other words, the party had reason to anticipate litigation and "the primary motivating purpose behind the creation of the document was to aid in possible future litigation."

(3) the materials must be prepared by or for a party's representative.[5]

*Ferko v. NASCAR*, 218 F.R.D. 125, 136 (E.D. Tex. 2003) (citations omitted); *see also In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000); Fed. R. Civ. P. 26(b)(3).

First, although emails can also be categorized as communications, most courts consider them to be documents for the purposes of the work product doctrine because they can contain legal theories and trial preparation materials. *See, e.g, BASF Corp. v. Man Diesel & Turbo N. Am., Inc.*, 2015 U.S. Dist. LEXIS 15615, at *9 (M.D. La. 2015). Second, materials gathered in

---

[5] Although not applicable here, should a party seek protection of a document as opinion work product, a heightened standard applies as it, "enjoys near absolute protection." *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.*, 314 F.R.D. 397, 411 (E.D. La. 2016). Here, Biosense does not seek protection under this heightened standard. (ECF. No. 49, p. 6-7, 15-16).

response to an EEOC charge are created "in anticipation of litigation," because an administrative inquiry is already underway. *Treat v. Tom Kelley Buick Pontiac GMC, Inc*., 2009 U.S. Dist. LEXIS 46218, at *23 (N.D. Ind. 2009) (collecting cases for the proposition that materials created in response to an EEOC charge are created "in anticipation of litigation."). Third, the human resource employees who authored the emails prepared Biosense's position statement at the behest of counsel, and therefore, were Biosense's representatives. Accordingly, the Court finds that the Group 5 documents are protected by the work-product doctrine.

**D.     Conclusion**

In sum, the Court concludes that:

- The Group 1 communications with United States and Mexican Counsel are protected by attorney-client privilege and did not include business decisions;
- The Group 2 and 3 communications between employees without Counsel are protected by attorney-client privilege;
- The Group 4 drafts are protected by attorney-client privilege; and
- The Group 5 documents are protected by the work-product doctrine.

Based on the foregoing, **IT IS HEREBY ADJUDICATED** that the documents are **PRIVILEGED** and **CORRECTLY WITHHELD** as set forth herein.

**SIGNED** and **ENTERED** this 8th day of August, 2018.

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**